UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARAH WHITEHEAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 09 C 3765 |
| LAWRENCE J. BOND, KEVIN S. GEYER, ) | |
| THOMAS STACK, MICHAEL J. STEVENS, ) | Judge Ruben Castillo |
| UNKNOWN NAMED POLICE OFFICERS OF ) | |
| THE CHICAGO POLICE DEPARTMENT, ) | |
| and THE CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Sarah Whitehead ("Whitehead") sued several Chicago Police Officers and the City of Chicago (collectively, "Defendants") for false arrest, excessive force, and other state law claims related to her detention by the police in June 2008. (R. 58, Second Am. Compl.) After a three-day trial, a jury returned a verdict in favor of Defendants on both of Whitehead's remaining claims: illegal seizure/detention (Count I) and excessive force (Count II). Presently before the Court is Whitehead's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 as to her illegal seizure/detention claim against Defendants Lieutenant Michael J. Stevens ("Stevens") and Sergeant Thomas Stack ("Stack"). (R. 101, Pl.'s Mot. for J. as a Matter of Law (hereinafter, "Pl.'s Mot. for J.").) In the alternative, Whitehead asks the Court to order a new trial pursuant to Rule 59(a). (R. 102, Pl.'s New Trial Mot.) For the reasons stated below, the motions are denied.

## FACTS

Whitehead filed suit against several police officers and the City of Chicago on June 22, 2009. (R. 1, Compl.) The suit stemmed from events occurring on June 20, 2008 in Whitehead's neighborhood in Chicago. That afternoon, Officer Lawrence Bond ("Bond") and his partner pulled over a car in which Whitehead's son, Daniel Whitehead ("Daniel"), was riding a few blocks from Whitehead's home. A physical altercation between Daniel and Bond ensued. Whitehead's neighbor alerted her of the situation, telling her that "they're killing your son." Upon hearing this news, Whitehead hurried to the scene of the altercation in search of her son. There she found that a crowd had gathered. What happened next, which is hotly contested, gave rise to this suit.

Whitehead testified that the scene where the police had pulled Daniel's car over was calm and under control when she arrived. Looking for her son, she approached several police officers to inquire about his location. When they did not respond, she began looking in the squad cars at the scene. At the third squad car, she encountered Bond. Whitehead said she told Bond that she was Daniel's mother, and Bond shouted at her to get back on the curb across the street from where they were standing. She said she complied, and turned to walk towards the curb. She testified that Bond followed her, saying things about Daniel, kicking her, and walking on the heels of her feet. She said that he continued to harass her until Stevens came over and tried to restrain him. Whitehead testified that she was also harassed by Stevens, and that this encounter resulted in her arrest by Stevens. She said that she had complied with all of Stevens' orders, and that he had no reason to arrest her. During her arrest, she said that she was treated roughly, which resulted in bruising and abrasions on her arms. Whitehead was placed in a squadrol and

2

was released ten to twenty minutes later.

The testimony of Stack and Stevens painted a very different scene. Contrary to Whitehead's testimony, Stack testified that the crowd was large and hostile, creating a chaotic situation. He said that he observed Whitehead in the crowd about twenty to thirty feet from Bond. He further stated that Whitehead was yelling and being disruptive, and that two individuals from the crowd were holding her back. At one point she broke free and headed towards Bond. According to Stack, she was stopped by Stevens, who arrested her about ten feet from where Bond was standing.

Stevens also testified that the crowd at the scene was large and hostile. He said that he saw Whitehead screaming and flailing her arms, pulling the crowd towards the patrol car where Daniel was in custody. He stated that when he told Whitehead to step back, she did not. Whitehead was then arrested. Stevens observed Bond at the scene standing by his car, but he did not know what he was doing because he was focused on Whitehead. Both Stack and Stevens testified that they believed there was probable cause to arrest Whitehead given her failure to obey orders and her threatening behavior.

Bond testified that he and his partner had an altercation with Daniel following a traffic stop, and that a crowd had formed at the location of the arrest. He said that as the arresting officer, he was mainly focused on Daniel, and left a short time after placing Daniel in a squad car. Contrary to Whitehead's testimony, Bond testified that he never heard or noticed Whitehead at the scene.

After a three-day jury trial, the jury found for Defendants on both the illegal detention and excessive force claims.

## ANALYSIS

### I. Judgment as a Matter of Law

Rule 50 authorizes a court to enter judgment as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).[1] Under this standard, "the question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from the evidence, is sufficient to allow a reasonable jury to find in favor of the [defendant]." *Hall v. River Forest, Inc.*, 536 F.3d 615, 619 (7th Cir. 2008) (citation omitted). In making this determination, a court may not reweigh the evidence, draw its own inferences, or substitute its own determinations regarding the credibility of the witnesses for those made by the jury. *Gower v. Vercler*, 377 F.3d 661, 666 (7th Cir. 2004).

In support of the motion for judgment as a matter of law, Whitehead claims that the testimony of Stack and Stevens—the "only witnesses who testified to the existence of probable cause" for the arrest and detention of Whitehead—should be disregarded under "the theory of inherent incredibility." (R. 101, Pl.'s Mot. for J. at 1-2.) Specifically, Whitehead claims that the testimony of Stack and Stevens is inherently incredible because the testimony included a recounting of events that was physically impossible and internally inconsistent. (*Id.* at 4-5.) Without that testimony, Whitehead claims, there was insufficient evidence for the jury to find for Defendants. (*Id.* at 5.)

---

[1] Because the Court did not grant Whitehead's oral motion for judgment as a matter of law under Rule 50(a) at the close of evidence during the trial, Whitehead has renewed the motion under Rule 50(b).

4

It is well-settled that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Payne v. Milwaukee Cty.*, 146 F.3d 430, 432 (7th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Thus, when a case comes down to a credibility contest, a court may not grant judgment as a matter of law simply because it believes one witness over another. *See Kasper v. Saint Mary of Nazareth Hosp.*, 135 F.3d 1170, 1173 (7th Cir. 1998). A court may, however, disregard testimony that is "opposed to the laws of nature or undisputed physical or scientific facts." 9B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2527 (3d ed. Supp. 2010). Accordingly, "[w]hen a case turns on credibility, neither side is entitled to judgment as a matter of law unless objective evidence shows that it would be unreasonable to believe a critical witness for one side." *Kasper*, 135 F.3d at 1173 (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)).

Here, Whitehead argues that the testimony of Stack and Stevens should be disregarded by the Court as inherently unreasonable. Given Bond's testimony that he did not see Whitehead at the scene, she contends that Stack and Stevens' version of events was both physically impossible and internally inconsistent. She specifically points to their testimony that: (1) they observed Whitehead acting in a "loud, hysterical, and out-of-control" manner; and (2) Whitehead was only ten feet away from Bond when she was placed in handcuffs. (R. 101, Pl.'s Mot. for J. at 4-5.)

The Court disagrees that this testimony is "inherently unreasonable." This is not a case in which "objective evidence shows it would be unreasonable to believe" the disputed testimony. Instead, the jurors in this case could have concluded that a whole host of events or a confluence

5

thereof caused Bond not to hear or notice Whitehead. The jurors heard testimony about the noise and rowdiness of the crowd that had gathered at the scene. They also heard testimony that Bond had been in a physical altercation with Daniel, whom he was in the process of arresting and processing when Whitehead appeared at the scene. Bond also testified that he did not even notice the squadrol–a large, seemingly difficult-to-miss vehicle–that had arrived on the scene.

Whitehead's arguments about the physical impossibility and inherent inconsistency of Stack and Stevens' version of events do not rely on objective evidence. Instead, Whitehead assumes that the jury believed her testimony that the crowd at the scene was a calm, small group of observers rather than large and hostile as described by Stack and Stevens in their testimony. She also ignores that the jurors may have believed Bond's testimony that his attention was on Daniel, with whom he had a physical altercation just a few minutes before Whitehead's arrival on the scene.

Contrary to Whitehead's assertions, this case does not fall into the narrow category of cases in which acceptance of a critical witness' testimony is unreasonable as a matter of law. Rather, this case turned on credibility, and as previously stated, it is the jury's province to decide which witnesses to believe. *See Kasper*, 135 F.3d at 1173. The Court accordingly concludes that there was sufficient evidence for the jury to find for Defendants. Whitehead is therefore not entitled to judgment as a matter of law. The Court now turns to Whitehead's motion for a new trial.

## II.   New Trial

Rule 59 allows a court to order a new trial if "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving

party." *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010) (citation omitted). Whitehead posits two grounds for granting a new trial. First, she contends a new trial is warranted because evidentiary errors occurred at trial. (R. 102, Pl.'s New Trial Mot. at 1.) Second, she argues that the verdict was against the manifest weight of the evidence. (*Id.* at 8.) The Court will consider each argument in turn.

### A. Evidentiary errors

A new trial may be ordered on the basis of an evidentiary error "if the error has a substantial and injurious effect or influence on the determination of a jury." *Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 994 (7th Cir. 2005) (citation omitted). Whitehead argues that the Court erred in its in limine ruling regarding the exclusion of evidence pertaining to Daniel, James Jones ("Jones"), the co-passenger of the car in which Daniel was pulled over, and Marcus Mynatt ("Mynatt"), a bystander at the scene of Daniel's arrest who was charged with obstructing a peace officer and disorderly conduct. (R. 102, Pl.'s New Trial Mot. at 1-2.) Whitehead sought to bar "evidence, testimony, and arguments regarding [Daniel, Jones, and Mynatt], and their arrests" as irrelevant and prejudicial. (R. 78, Pl.'s Mot. in limine at 1-2.) The Court granted in part and denied in part this motion, permitting evidence relating to the events leading up to Whitehead's appearance at the scene of the arrest, but barring the charges and guilty pleas of Daniel, Jones, and Mynatt that occurred away from the scene of the incident. (R. 102, Pl.'s New Trial Mot., Ex. A at 12-16.)

In her motion for a new trial, Whitehead fails to persuade the Court that its ruling was in error. The evidence Whitehead sought to bar provided the necessary context for the situation giving rise to Whitehead's claims. Had this evidence been excluded, the jury would have been

7

left to wonder what brought Whitehead and the individual Defendants together that afternoon, and why Whitehead was looking for her son. Additionally, the evidence pertaining to Daniel's prior altercation with Bond was highly relevant to the credibility of Bond's testimony that he was focusing on Daniel at the time Whitehead appeared on the scene. This evidence was also highly relevant to the dispute about the mood of the crowd that gathered.

The admission of this evidence was also proper because its probative value was not substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. The Court barred the evidence of the charges and guilty pleas of Daniel, Jones, Mynatt because it was not relevant to what happened at the scene of the incident involving Whitehead, and thus had little probative value and was unduly prejudicial. (R. 102, Pl.'s New Trial Mot., Ex. A at 12-13.) What happened leading up to Whitehead's arrival, however, was extremely probative to evaluating the truthfulness of each side's version of events. Admittedly, the evidence may have damaged Whitehead's case in that it made her story less credible that both she and the crowd were calm even though there had been a physical altercation between Daniel and Bond. To be unfairly prejudicial, however, the evidence must be such that its admission would "induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented.'" *Lewis v. Chi. Police Dept.*, 590 F.3d 427, 441 (7th Cir. 2009). That is not the case here. The Court properly ruled to admit the highly probative evidence regarding the events leading up to Whitehead's incident with Defendants. The Court accordingly declines to grant a new trial on the basis of an evidentiary error.

**B.     Verdict against the manifest weight of the evidence**

Rule 59 also permits a court to order a new trial "[i]f, after evaluating the evidence, the district court is of the opinion that the verdict is against the manifest weight of the evidence[.]" *Mejia v. Cook Cty., Ill.*, No. 09-3540, 2011 WL 1518878, at *1 (7th Cir. Apr. 22, 2011) (citation omitted). In ruling on a motion for a new trial, a court "may consider the credibility of witnesses, the weight of the evidence, and anything else which justice requires." *Bob Willow Motors, Inc. v. Gen. Motors Corp.*, 872 F.2d 788, 798 (7th Cir. 1989). However, "[t]he district court's power to grant a new trial on weight grounds is not unlimited: a certain deference to the jury's conclusions is appropriate. This deference is encompassed within the manifest weight standard, which balances a decent respect for the collective wisdom of the jury against a duty not to approve miscarriages of justice." *Mejia*, 2011 WL 1518878, at *3 fn.1 (internal quotation marks and citations omitted). In weighing the facts, the court "is bound to the same evidence the jury considered, and can strike a piece of evidence from its weighing process only if reasonable persons could not believe it because it contradicts indisputable physical facts or laws." *Id.* at *2 (internal quotation marks and citation omitted). A verdict will be set aside as against the manifest weight of the evidence "only if no rational jury could have rendered the verdict." *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008) (internal quotation marks and citation omitted).

In claiming that the weight of the evidence was against the verdict in this case, Whitehead's extremely brief argument merely refers the Court back to her arguments pertaining to her unlawful seizure and detention claim already rejected by the Court above. (R. 102, Pl.'s New Trial Mot. at 8.) She also seeks a new trial pertaining to her excessive force claim in Count II, but fails to show that the jury's verdict with respect to Count II was against the manifest

weight of the evidence. (R. 114, Pl.'s New Trial Reply at 7-8.) Instead, Whitehead's arguments merely rehash the evidence, contending that Whitehead's case was stronger than Defendants. The jurors, however, were presented with two sharply conflicting portrayals of the events on June 20, 2008, and they were entitled to believe either side. Whitehead testified that she was harassed by Bond and Stevens after calmly inquiring about her son, and then was thrown in the back of a squadrol despite complying with all of their orders. Bond testified that he never saw Whitehead at the scene, and Stevens and Stack testified that Whitehead acted disruptively and failed to follow the orders they had issued to control the hostile crowd that had gathered. Given this conflicting testimony, none of which "contradicts indisputable physical facts or laws," *Mejia*, 2011, WL 1518878, at *2, the jury had a reasonable basis to find that the individual Defendants had probable cause to arrest Whitehead and did not use excessive force in doing so.

After weighing all of the evidence presented at trial, the Court finds that this is not a case in which "no rational jury could have rendered the verdict." *Moore*, 546 F.3d at 427. As the Seventh Circuit recently reiterated, "[o]nly when the verdict is contrary to the manifest weight of the evidence should a motion for a new trial challenging the jury's assessment of the facts carry the day." *Mejia*, 2011 WL 1518878, at *3, fn.1. Because the verdict was not against the manifest weight of the evidence, the Court declines to grant Whitehead a new trial.

## CONCLUSION

For the reasons set forth above, Whitehead's motions for judgment as a matter of law (R. 101) and for a new trial (R. 102) are DENIED.

Entered: *[signature]*

**Judge Ruben Castillo
United States District Court**

**Dated:** May 3, 2011